UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| WHITE COMMUNICATIONS, LIMITED LIABILITY COMPANY and JEFFERY N. WHITE,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>vs.<br><br>SYNERGIES3 TEC SERVICES, LLC, ERIC ATCHLEY, and BENTON P. ODOM, JR.,<br><br>    Defendants/Counterclaimants. | No. 4:18-cv-00124-RGE-CFB<br><br>**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM TO PLAINTIFF'S AMENDED AND SUBSTITUTED COMPLAINT AND JURY DEMAND** |

COME NOW Defendants Synergies 3 Tec Services, LLC ("Synergies"), Eric Atchley, and Benton P. Odom and for their Answer to the Plaintiff's Amended and Substituted Complaint and Jury Demand state:

**JURISDICTION AND VENUE**

1. Defendants admit the allegations in Paragraph 1.

2. Defendants admit the allegations in Paragraph 2. Defendants further state that, pursuant to 28 U.S.C. § 1441(a), this Court is the proper venue for this action because it embraces the place where Plaintiffs' original action was filed.

**IDENTIFICATION OF PARTIES**

3. Defendants admits the allegations in Paragraph 3.

4. Defendants lack knowledge sufficient to admit or deny the allegations in Paragraph 4 and accordingly deny the same.

5. Defendants affirmatively state that Synergies3 Tec Services, LLC is a limited liability company organized and existing under the laws of the State of Texas with members in Texas, Arizona, and Wisconsin. The remaining allegations in Paragraph 3 are denied.

6. Defendants admit that Eric Atchley is an individual residing in the State of Texas. Defendants admit that, after the formation of Synergies following the merger between portions of Atchely and Defendant Benton P. Odom, Jr.'s company and portions of Plaintiff White Communications, Limited Liability Company ("White Communications"), Atchely was and remains a member of the same. The remaining allegations contained in Paragraph 6 are denied.

7. Defendants admit that Benton P. Odom, Jr. is an individual residing in the State of Texas. Defendants admit that, after the formation of Synergies following the merger between portions of Atchely and Odom's company and portions of White Communications, Odom was and remains a member of the same. The remaining allegations contained in Paragraph 7 are denied.

## FACTUAL ALLEGATIONS

8. Defendants affirmatively state that, in July or August 2016, Atchley and Odom entered into an oral agreement with White Communications to merge portions of their businesses and form Synergies. Defendants affirmatively state that such agreement was never reduced to writing. Defendants specifically deny that there was any agreement to purchase or pay for any assets of White Communications as part of the business merger—none of the entities own products, nor do they have employees, only technicians working as independent contractors. The remaining allegations contained in Paragraph 8 are denied.

9. Defendants admit that Odom and Atchley agreed to pay White Communications $400,000.00 to enable the merger to occur. Defendants affirmatively state that White Communications had collateralized certain real property owned by Jeffery White's mother,

2

which prevented the merger from occurring. Odom and Atchley paid White Communications $400,000.00 to remove the liens from the real property and enable the merger to occur. Defendant specifically denies the existence of any "Asset Purchase Agreement" or that the $400,000.00 was paid pursuant to any such agreement. Defendants deny that any duty to issue Jeffery White any ownership interest in Synergies or the payment of 4.5% of Synergies's weekly gross revenue arose from any purported Asset Purchase Agreement. Defendants affirmatively state that any duty to issue Jeffery White any ownership interest in Synergies or the payment of any percentage of Synergies's weekly gross revenue arose solely out of the Synergies Operating Agreement, a true and correct copy of which is attached hereto as Exhibit 1. The remaining allegations contained in Paragraph 9 are denied.

10.    Defendant admits that portions of the companies merged to form Synergies in July or August 2016. The remaining allegations contained on Paragraph 10 are denied.

11.    Defendants deny that any Asset Purchase Agreement exists. Defendants affirmatively state that they fulfilled all of their duties under the oral agreement to merge Odom and Atchley's company with portions of White Communications. The remaining allegations contained in Paragraph 11 are denied.

12.    Defendants admit that Odom and Atchley paid White Communications $400,000.00 to facilitate the merger of the companies and formation of Synergies. Defendants further admit that, pursuant to the Operating Agreement, Synergies issued Jeffery White a 29% ownership interest in Synergies. Defendants specifically deny any implication that Synergies breached any agreement by issuing a 29% interest, rather than a 33.3% interest, in Synergies. Defendants affirmatively state that the Operating Agreement provides only for the issuance of a 29% ownership interest in Synergies to Jeffery White. *See* Exhibit 1 at 2. Defendants admit that

Synergies paid Jeffery White 4.5% of its gross weekly revenues from approximately September 22, 2016 until November 17, 2016. Defendants deny that any payment of "smaller sums during the period of November 16, 2016 through February 22, 2018" arose out of the Operating Agreement or the purported Asset Purchase Agreement. Defendants affirmatively state that, after an incident involving one of White Communications's customers, Synergies's other members determined that Jeffery White should be removed as a member for cause pursuant to the Operating Agreement. *See* Exhibit 1 at 3. Synergies and Jeffery White orally agreed to a secondary termination arrangement ("Secondary Termination Agreement") in lieu of the buyout provision contained in the Operating Agreement. *See* Exhibit 1 at 9. Rather than the one-time payment of $250,000.00 upon removal for cause as provided in the Operating Agreement, the Secondary Termination Agreement provided for weekly payments of $25,000.00 for the first year following agreement to Secondary Termination Agreement, $15,000.00 per week for the second year, and $7,500.00 per week for the third and fourth year following the Secondary Termination Agreement. Defendants admit that Synergies paid sums to Jeffery White under the Secondary Termination Agreement from the date of his removal for cause on October 31, 2016, through February 2018.[1]

13. Defendants deny the allegations in Paragraph 13.

14. Defendants admit the allegations in Paragraph 14. *See* Exhibit 1.

15. Defendants deny the allegations in Paragraph 15.

16. Defendants deny the allegations in Paragraph 16.

---

[1] Due to an oversight on Synergies's part, Synergies actually continued to pay Jeffery White the $25,000 per week he was entitled to for the first year following agreement to the Secondary Termination Agreement past the time he was entitled to receive such amounts and into early 2018. Once the error was found, Synergies reduced the weekly payments to Jeffery White to $15,000.00 per week in accordance with the Secondary Termination Agreement. To date, Jeffery White has been paid approximately $1.3 million under the Secondary Termination Agreement.

17. Defendants deny that they made any false or defamatory statements, or interfered in any way with the business of White Communications. The remaining allegations contained in Paragraph 17 are denied for lack of knowledge.

### COUNT I: WHITE COMMUNICATIONS CLAIM FOR BREACH OF ASSET PURCHASE AGREEMENT (AGAINST SYNERGIES)

18. Defendants reallege and incorporates herein by reference the allegations of Paragraphs 1 through 17 above.

19. Defendants specifically deny that any Asset Purchase Agreement existed, and deny any implication that Synergies purchased assets from White Communications. The remaining allegations contained in Paragraph 19 are denied.

20. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations contained in Paragraph 20.

21. Defendants deny the allegations in Paragraph 21 and expressly deny that they breached any agreements with Plaintiffs.

To the extent that the paragraph that follows Paragraph 21, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

### COUNT II: JEFFERY WHTIE CLAIM FOR BREACH OF ASSET PURCHASE AGREEMENT (AGAINST SYNERGIES)

22. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 21 above.

23. Defendants specifically deny that any Asset Purchase Agreement existed, and deny any implication that Synergies purchased assets from White Communications. The remaining allegations contained in Paragraph 23 are denied.

24. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations in Paragraph 24.

25. Defendants deny the allegations in Paragraph 25 and expressly deny that they breached any agreements with Plaintiffs.

To the extent that the paragraph that follows Paragraph 25, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

### COUNT III: WHITE COMMUNICATIONS CLAIM FOR BREACH OF IMPLIED CONTRACT (AGAINST SYNERGIES)

26. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 25 above.

27. Defendants deny any inference that Synergies ever had a duty to pay White Communications any sums under the Operating Agreement or the Secondary Termination Agreement. Defendants affirmatively state that any sums to be paid pursuant to the Operating Agreement or Secondary Termination Agreement were solely payable to Jeffery White. Defendants deny the existence of any Asset Purchase Agreement. The remaining allegations contained in Paragraph 27 are denied.

28. Defendants deny the allegations in Paragraph 28.

29. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations in Paragraph 29.

30. Defendants deny the allegations in Paragraph 30 and expressly deny the existence of an implied contract or any breach thereof.

To the extent that the paragraph that follows Paragraph 30, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

### COUNT IV: JEFFERY WHITE CLAIM FOR BREACH OF IMPLIED CONTRACT (AGAINST SYNERGIES)

31. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 30 above.

32. Defendants deny the allegations in Paragraph 32.

33. Defendants deny the allegations in Paragraph 33.

34. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations in Paragtaph 34.

35. Defendants deny the allegations in Paragraph 35.

To the extent that the paragraph that follows Paragraph 35, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

### COUNT V: WHITE COMMUNICAIONS CLAIM FOR PROMISSORY ESTOPPEL (AGAINST SYNERGIES)

36. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 35 above.

37. Defendants deny that any Asset Purchase Agreement was ever reached between Odom and Atchley and White Communications. Defendants affirmatively state that any sums paid in connection with the merger between Odom and Atchley's company and White Communications have been paid in full. Defendants further affirmatively state that any sums to be paid pursuant to the Operating Agreement or Secondary Termination Agreement were solely

payable to Jeffery White. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations in Paragraph 37.

38. Defendants deny the allegations in Paragraph 38.

39. Defendants deny the allegations in Paragraph 39.

40. Defendants deny the allegations in Paragraph 40.

41. Defendants deny the allegations in Paragraph 41 and expressly deny liability.

To the extent that the paragraph that follows Paragraph 41, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

## COUNT VI: JEFFERY WHITE CLAIM FOR PROMISSORY ESTOPPEL (AGAINST SYNERGIES)

42. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 41 above.

43. Defendants admit that the Operating Agreement created contractual rights to be paid thereunder, and further admits that an oral agreement was made with respect to the Secondary Termination Agreement. Defendants further expressly state that they fulfilled all of their obligations under the Operating Agreement and Secondary Termination Agreement. Defendants deny that the Secondary Termination Agreement, even if breached, is enforceable. Defendants further admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations contained in Paragraph 43.

44. Defendants deny the allegations in Paragraph 44.

45. Defendants deny the allegations in Paragraph 45.

46. Defendants deny the allegations in Paragraph 46.

47. Defendants deny the allegations in Paragraph 47 and expressly deny liability.

To the extent that the paragraph that follows Paragraph 47, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

### COUNT VII: PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT AGAINST ALL DEFNDANTS

48. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 48 above.

49. Defendants deny the allegations in Paragraph 49.

50. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations in Paragraph 50.

To the extent that the paragraph that follows Paragraph 50, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

### COUNT VIII: JEFFERY WHITE CLAIM AGAINST ALL DEFENDANTS FOR BREACH OF SYNERGIES3 OPERATING AGREEMENT

51. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 50 above.

52. Defendants deny the allegations contained in Paragraph 52.

53. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations in Paragraph 53.

54. Defendants deny the allegations in Paragraph 54 and expressly deny liability.

To the extent that the paragraph that follows Paragraph 54, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

## COUNT IX: WHITE COMMUNICATIONS THIRD PARTY BENEFICIARY CLAIM AGAINST ALL DEFENDANTS FOR BREACH OF OPERATING AGREEMENT

55. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 54 above

56. Defendants deny the allegations in Paragraph 56.

57. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations in Paragraph 57.

58. Defendants deny the allegations in Paragraph 58 and expressly deny liability.

To the extent that the paragraph that follows Paragraph 58, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

## COUNT X: PLAINTIFF'S CLAIM OF DEFAMATION AGAINST ALL DEFENDANTS

59. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 58 above.

60. Defendants deny the allegations in Paragraph 60.

61. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations in Paragraph 61.

62. Defendants deny the allegations in Paragraph 62.

To the extent that the paragraph that follows Paragraph 62, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

## COUNT XI: WHITE COMMUNICATIONS CLAIM AGAINST ALL DEFENDANTS FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE CONTRACT AND BUSINESS ADVANTAGE

63. Defendants reallege and incorporate herein by reference the allegations of Paragraphs 1 through 62 above.

64. Defendants deny the allegations in Paragraph 64.

65. Defendants admit that the Court has jurisdiction to hear this claim. Defendants deny the remaining allegations in Paragraph 65.

66. Defendants deny the allegations in Paragraph 66.

To the extent that the paragraph that follows Paragraph 66, beginning "WHEREFORE," requires a response, Defendants deny liability and deny that Plaintiffs are entitled to damages or other relief.

For the foregoing reasons, Defendants respectfully requests the Court dismiss the Amended Complaint at Plaintiffs' cost.

## **AFFIRMATIVE DEFENSES**

1. The Amended Complaint fails to state a claim upon which relief can be granted.

2. Some or all of Plaintiffs' claims may be barred by the applicable statute of limitations.

3. Some or all of Plaintiffs' claims may be barred by the doctrines of waiver, release, accord and satisfaction, estoppel, judicial estoppel, laches, or unclean hands.

4. If Plaintiffs have suffered any damages by reason of the conduct alleged in the Amended Complaint, which Defendants specifically and expressly deny, Plaintiffs have failed to take action, or have taken insufficient action, to mitigate those damages. Consequently, any damages suffered by Plaintiffs must be reduced in an amount by which Plaintiffs could have mitigated those damages, if any.

5. Some or all of Plaintiffs' contract claims may be barred by the statute of frauds and the Plaintiffs estopped from enforcing the same.

6.  Some or all of Plaintiffs' contract claims may be barred because the purpose of the contracts in question was frustrated.

7.  Some or all of Plaintiff's contract claims may be barred because of Plaintiffs' prior material breach.

8.  The allegedly defamatory statements of which Plaintiffs complain were true or substantially true when published.

9.  The allegedly defamatory statements of which Plaintiffs complain were made under conditions granting Defendants a qualified privilege to make them.

10. The allegedly defamatory statements of which Plaintiffs complain were mere opinions held by Defendants.

WHEREFORE, having fully answered, Defendants hereby pray the Court for its Order entering judgment in its favor and against Plaintiffs on Plaintiffs' Amended Complaint and Jury Demand, for their costs, and for such other and further relief as the Court deems appropriate and just.

### COUNTERCLAIM – UNJUST ENRICHMENT AGAINST WHITE COMMUNICATIONS

1.  At or around the time that certain portions of White Communications merged with Odom and Atchley's company, in or around September 2016, the parties entered into a second agreement in which White Communications, or another entity owned and controlled by Jeffery White, agreed to provide the services of approximately eight dispatchers and seven other White Communications employees or contractors to perform work solely for Synergies (the "Services Agreement").

2.  Synergies agreed to pay certain amounts per employee per week for the services of these employees under the Services Agreement.

3. Despite this oral understanding that the weekly payment amounts covered White Communications employees to work specifically for Synergies, Atchley learned that certain of the employees supposed to be covered by the Services Agreement were actually performing work for some of Jeffery White's other business lines.

4. Furthermore, Synergies also learned, in or around December 2017, that White Communications no longer employed many of the employees covered by the Services Agreement.

5. Despite knowing that the Services Agreement was meant to cover the fifteen employees agreed upon at the formation of the Services Agreement, and that such employees were only meant to perform work for Synergies, neither White Communications nor Jeffery White ever communicated that such covered employees had been terminated or had resigned.

6. In or around February 2018, Synergies terminated the Services Agreement.

7. The Services Agreement is a binding oral contract.

8. Over the course of the Services Agreement, White Communications received over $800,000 as payment from Synergies under the Services Agreement.

9. It would be unjust to permit White Communications to retain such funds when it received them with the full knowledge that it was not entitled to the same, yet took no action to correct Synergies's incorrect belief that the services for which it was paying were actually being provided.

10. Synergies is entitled to recovery of the wrongly-retained funds from White Communications.

WHEREFORE, Synergies prays for judgment against White Communications for damages in an amount that will fairly compensate Synergies for the damages it sustained, the

court costs and expenses of this action, and for such other relief that may be just and proper under the circumstances.

/s/ Ethan S. Olson
Frank Boyd Harty
Ethan S. Olson
Nyemaster Goode, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309
Telephone: (515) 283-3100
Facsimile: (515) 283-8045
Email: fharty@nyemaster.com
         eolson@nyemaster.com

/s/ Jay R. Aldis
Jay R. Aldis (Pro Hac Vice)
Bracewell LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002-2770
Telephone: (713) 221-1381
Fax: (800) 404-3970
Email: jay.aldis@bracewell.com

**ATTORNEYS FOR DEFENDANTS SYNERGIES3 TEC SERVICES, LLC, ERIC ATCHLEY, AND BENTON P. ODOM**

## Certificate of Service

 I hereby certify that on October 18, 2018, I presented the foregoing document to the Clerk of Court for filing and uploading into the ECF system, which will send notification to the following ECF system participants:

William W. Graham
Graham, Ervanian & Cacciatore, L.L.P.
317 Sixth Avenue, Suite 900
Des Moines, IA  50309
Telephone:  (515) 244-9400
Facsimile: (515) 282-4235
wwg@grahamlawiowa.com

ATTORNEY FOR PLAINTIFFS

               /s/ Shannon Greenman