IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| WHITE COMMUNICATIONS, LIMITED LIABILITY COMPANY, and JEFFERY N. WHITE, <br><br>                Plaintiffs, <br> v. <br><br> SYNERGIES3 TEC SERVICES, LLC, ERIC ATCHLEY, and BENTON P. ODOM, JR., <br><br>                Defendants. | NO. 4:18-cv-00124-RGE-CFB <br><br><br><br> **DEFENDANTS' RESISTANCE TO PLAINTIFFS' MOTIONS TO EXCLUDE AND LIMIT EVIDENCE** |

Defendants Synergies3 Tec Services, LLC ("Synergies), Eric Atchley, and Benton P. Odom, Jr., submit their resistance to Plaintiffs' Motions to Exclude and Limit Evidence.

**<u>INTRODUCTION</u>**

The Plaintiffs in this lawsuit have made eleven claims against Defendants, all centering around two events: Mr. White sending a text message to a White Communications' customer stating, "I wanna fuck you," and Mr. White's subsequent removal as a member of Synergies. More particularly, Plaintiffs make claims of defamation based on comments about the offensive text message and breach of contract actions premised on the argument that Defendants were in possession of no information about Mr. White that could support the notion that he had sent the text message, and therefore could not have been terminated for cause. Yet, in their Motion in Limine, Plaintiffs seek complete removal from trial of any evidence of the text message and any of the information Defendants actually possessed about Mr. White at the time they decided to remove him.

Because it is clear that development of this evidence at trial will be one of the central issues presented to the jury, Defendants resist Plaintiffs' attempt to bar the text message and Defendants' knowledge of it.

## I.    Evidence of alleged "for cause" removal from membership in LLC.

Plaintiffs seek exclusion of any and all evidence that Synergies removed Mr. White as a member of the company "for cause."  Mr. White's removal from Synergies, and whether that removal was justified under the "for cause" provision of the Operating Agreement, are at the very heart of this case.  It is undisputed that a text message sent to a White Communications customer precipitated Mr. White's removal as a member of Synergies.  While Plaintiffs may dispute that Mr. White sent the text message – despite ample evidence to the contrary, including Mr. White's admission to Mr. Atchley that he did so[1] – this certainly cannot result in exclusion of the text message itself.  For instance, Plaintiffs pursue a defamation claim entirely premised on the unsupported notion that Defendants communicated with third parties about the text message, and those communications resulted in damages to Plaintiffs.  Nevertheless, Plaintiffs argue that Defendants have not produced "the actual text message nor any admissible statement from the White Communications customer."  Motion at 2.

### A.    The text message and the justifications for Mr. White's removal are relevant.

Plaintiffs certainly must recognize the text message is essential to their breach of contract, defamation, and other causes of action, yet they request exclusion of *any* evidence suggesting that White was removed "for cause," and exclusion of the very text message that formed the basis of the removal.  Plaintiffs' theorize that (1) there is insufficient evidence of irreparable harm to justify admission of the text message and other testimony regarding "for cause" removal, and

---

[1] The portion of Mr. Atchley's deposition testimony discussing Mr. White's admission that he sent the text message is attached as Exhibit A [Atchley Dep. 36:2-14; 66:24-67:19].

(2) Defendants failed to take adequate steps to determine whether Mr. White actually sent the offensive text message, and therefore cannot establish that they acted properly pursuant to the Operating Agreement.

> **1.    There is sufficient evidence of irreparable harm to submit this evidence to the jury.**

Plaintiffs suggest that, based on the record, there is no evidence establishing "irreparable harm" to Synergies stemming from this alleged text message.  However, this argument is flawed for two reasons.  First, Synergies' justification for removal of Mr. White as a member is directly relevant to whether immediate or deferred, irreparable economic or reputational harm occurred.  As noted above, the text message Mr. White sent to a customer is at the center of this dispute.  What Plaintiffs fail to disclose is that, at or around the time Mr. White sent the text message in question, DirecTV and AT&T were in the process of reevaluating their fulfillment contracts with companies like Synergies.  Mr. Atchley testified that, in his opinion, the text message in question was "going to end" Synergies "if they [DirecTV and AT&T] connected Mr. White to Synergies3."[2]  In essence, Mr. Atchley testified that, had Synergies not taken the action of removing Mr. White, AT&T, which knew that White was affiliated or associated with Synergies, would have terminated its contract with Synergies, causing irreparable economic and reputational harm.  *See id.*

To further illustrate this point, Defendants' other witnesses who received and reviewed communications from DirecTV and AT&T will testify that DirecTV and AT&T had made the connection between Mr. White and Synergies, which is how DirecTV and AT&T knew to pass on the email and text to Synergies.  Thus, at the time Synergies first came into possession of the text message, its reputation had already been injured, at the very least with its client.  Contrary to

---

[2] Relevant portions of Mr. Atchley's deposition transcript are attached as Exhibit B [Atchley Dep. 48:21-61:6].

Plaintiffs' assertion, there is ample evidence of irreparable harm in the record, sufficient to submit the question to a jury.

Second, the quoted portion of the Synergies Operating Agreement makes clear that a for-cause removal can be precipitated by acts which cause "immediate *or deferred*, irreparable economic or reputational harm."  Exhibit 1 to Pl.'s Motion (emphasis added).  It is clear based on Mr. Atchley's testimony, and the testimony that Defendants expect to elicit from other witnesses at trial, that the question of whether economic or reputational harm, immediate or deferred, occurred as a result of Mr. White sending the offending text message, is one that should be put to the jury.  Plaintiffs' fixation solely on whether irreparable harm occurred immediately upon Mr. White's sending of the text message is misplaced.  Because Defendants' witnesses will testify that Synergies' contract with AT&T would have been terminated had Synergies not taken measures to address those actions, the jury should be allowed to determine whether Mr. White's actions caused immediate or deferred economic or reputational harm.[3]

Plaintiffs intimate that the justification for Mr. White's removal as a member of Synergies is relevant only if Defendants can prove, *a priori*, immediate or deferred irreparable economic or reputational harm.  This, however, is one of the ultimate questions being put before the jury.  Whether Mr. White's conduct justified removal, and whether the conduct caused immediate or deferred irreparable economic or reputational harm, are one and the same inquiry.  Plaintiffs' request that the Court permit them to elicit evidence that Mr. White was removed as a member of Synergies, but prevent Defendants from explaining why, transforms Plaintiffs' claim that Synergies breached its Operating Agreement purely into a question of damages.  Defendants have

---

[3] For example, Mr. Odom is expected to testify, as he did in his deposition, that he believed that the effects of what Mr. White had done were already set in motion after the text message was sent, and it was inevitable that there were going to be professional ramifications from DirecTV and/or AT&T to Synergies's business because of Mr. White.

never admitted liability, and the question of whether Mr. White's removal was proper has always been a matter of contention between the parties. Evidence suggestive that Mr. White was removed for cause makes a fact of ultimate consequence in this case—whether or not Synergies breached its Operating Agreement—more or less probable. Accordingly, it is relevant and admissible. *See* Fed. R. Evid. 401, 402.[4] To exclude it would not only deprive the jury of its proper fact-finding role in this case, but also deprive Defendants of explaining their actions, which are central to virtually every dispute in this case.

With respect to the text message itself, Plaintiffs complain that the "actual" text message has never been produced as part of this litigation. Motion at p. 2. Beyond the metaphysical question of what constitutes the "actual" version of a digital message, Defendants have produced the text message Synergies received from DirecTV via email.[5] Regardless of whether the text message was obtained directly by Synergies from the customer who received it, the email and attached text message form the basis for Defendants' actions in this case. Defendants will lay the proper foundation for the admission of this email and text message at trial, and pre-trial exclusion is inappropriate. Furthermore, as Plaintiffs acknowledge in their Motion, Mr. Atchley testified that Mr. White admitted to him that he wrote the text message, and Mr. White himself acknowledged that, apparently, the message was somehow sent from his cellular telephone to the customer.[6] For the reasons stated above, this text message and email string are relevant and admissible. *See* Fed. R. Evid. 401, 402.

---

[4] Defendants also resist Plaintiffs' intimation that they be required to prove to the Court that irreparable harm has occurred outside of the presence of the jury before such evidence may be presented to the jury. *See* Pl.'s Mot. at 3. For the reasons stated above, the question of irreparable harm is clearly within the province of the jury. Plaintiffs have cited no authority suggesting that irreparable harm is a legal question for the Court.

[5] A copy of this email chain and attached text message are attached as Exhibit C [DEF_S3_108-109, DEF_S3_013].

[6] The relevant portions of Mr. White's deposition are attached as Exhibit D [White Dep. 98:8-23].

**2.    Defendants acted on ample evidence when they removed Mr. White as a member, and the jury is entitled to hear that evidence.**

Mr. White claims Defendants did not take adequate steps to look into the issue of whether Mr. White sent the offensive text message, and therefore did not have adequate cause to remove him under the Operating Agreement. At his deposition, Mr. White stated, "I don't think that the investigation was conducted properly. I don't think that Ben [Odom] or Eric [Atchley] put a whole lot of effort into standing up for me or finding out if there were any alternatives, or I don't think they even asked what the penalties would be if they did keep me on working."[7] Mr. White suggested that Defendants should have done more to determine whether he actually sent the text message. *Id.* Yet, there is abundant evidence showing why Synergies' leadership determined that Mr. White's claim that he did not send the text message was not credible. The testimony establishes that, at the time Mr. White was removed as a member of Synergies, Defendants had the following information demonstrating Mr. White would have sent the text message:

a)    Mr. White told Mr. Atchley he sent it; *see* Exhibit A;

b)    Mr. Atchey heard from his business partner about an incident in San Antonio during which Mr. White became extremely intoxicated, propositioned a female waitress to go to his hotel room with him, and enlisted the help of hotel staff to obtain prostitutes;

c)    Mr. Atchley was told by one of his managers that Mr. White frequented Bourbon Street in New Orleans and liked to "throw it down." Defendants' other witnesses will testify more about the Bourbon Street incident(s) in which White boasted he had had sex with multiple teenagers;[8]

d)    Jerry Newsom, whom Defendants have identified as someone with knowledge in this case and who is Mr. White's self-proclaimed "right hand man" told Mr. Atchley, "this is just the kind of man he is, this is just what he does, just about every facility he goes to . . . the websites and stuff, the women."

---

[7] The relevant portions of Mr. White's deposition testimony are attached as Exhibit E [White Dep. 169:17-171:8].

[8] A copy of Mr. Atchley's deposition testimony regarding these incidents and reports is attached as Exhibit F [Atchley Dep. 39:24-40:8; 44:6-45:24; 47:1-21; 75:11-76:8].

Accordingly, there is ample evidence that Defendants based their decision regarding Mr. White's position at Synergies on abundant information about whether Mr. White had sent the offensive text message.  This evidence is undoubtedly relevant, as Mr. White even admitted that had one of his employees engaged in the same conduct and he had to determine whether to let him go, he would consider the employee's "reputation, whether he had had any issues before that or not."[9]  Clearly the text message and the evidence surrounding Synergies' belief that Mr. White indeed sent it, are relevant and admissible.  Plaintiffs cannot claim on one hand that Defendants possessed no information or knowledge that could possibly permit them to reach the conclusion that Mr. White sent a text message saying "I wanna fuck you," and then prohibit the jury from hearing evidence showing Defendants actually possessed a bevy of such information.  Synergies' leadership possessed information that led it to the inescapable conclusion that Mr. White had sent the text message, which is a matter of central importance in this case.  *See also* Part IV *infra.*  As such, this information is relevant, admissible, and should not be excluded.  *See* Fed. R. Evid. 401, 402.

### B.    The text message and evidence of why Mr. White was removed as a member of Synergies are not substantially more prejudicial than probative.

Plaintiffs further seek exclusion of this evidence pursuant to Rule 403, arguing that its prejudicial nature substantially outweighs any probative value it brings.  However, as Defendants have repeatedly reiterated, this text message and evidence that Mr. White was removed pursuant to the for-cause provision of the Operating Agreement are of central importance to this case.  Where the evidence at issue holds extremely high probative value, this is a factor that weighs against exclusion.  *See Bonds v. Dautovic*, 725 F. Supp. 2d 841, 847 (S.D. Iowa 2010).  Additionally, where the prejudicial nature of a piece of evidence is directly derived from its

---

[9] A copy of Mr. White's deposition testimony on this point is attached as Exhibit G [White Dep. 112:7-21].

probative value, Rule 403 exclusion is improper. *See id.* (citing *White v. Honeywell, Inc.*, 141 F.3d 1270, 1276 (8th Cir. 1998); *United States v. Yarns*, 811 F.3d 454, 456 (8th Cir. 1987)). Here, the prejudicial effect, which Plaintiffs admit is because of the obscene and offensive statements contained within the text message, is part and parcel to why Defendants elected to remove Mr. White as a member of Synergies. Furthermore, the statements in the text message are attributable to Mr. White himself. This Court has recognized that "the damage that follows from one's own statements is not 'unfair prejudice' for the purposes of a Rule 403 analysis." *Id.* (discussing Rule 403 in the context of the party opponent exception from the definition of hearsay).

Finally, the text message and evidence would not confuse or mislead the jury—they are directly probative of whether Mr. White's removal was wrongful pursuant to the Operating Agreement. For these and the foregoing reasons, Defendants request that the Court deny this portion of Plaintiffs' Motion and permit Defendants to submit evidence regarding the justification for Mr. White's removal as a member of Synergies.

## II.    The text message and its contents pursuant to Rules 1002 and 1003.

Plaintiffs seek exclusion of the text message in Exhibit C pursuant to Rules 1002 and 1003, or the "best evidence rule." Generally, the best evidence rule requires a party seeking to admit the contents of a writing, recording, or photograph to introduce such writing. *See* Fed. R. Evid. 1002. Plaintiffs argue Defendants cannot produce the original of the text message because "[t]he printed copy of the purported message that has been produced is obviously not [] an 'original' of the message." Pl. Mot. at 4. However, it is not quite as obvious as Plaintiffs state. Rule 1001(d) states that an "original" of electronically stored information, such as a text message, "means any printout—or other output readable by sight—if it accurately reflects the information." Fed. R. Evid. 1001(d). Thus, by the plain definition of the term "original" under the Rules, the screenshot

of the text message provided by Defendants in Exhibit C constitutes an "original."  Furthermore, there is nothing about the text message that is suggestive that it has been manipulated, or that it inaccurately reflects the information it purports to convey.  Indeed, White himself appears to admit as much.  *See* Exhibit D.

While Defendants have located no court in the Eighth Circuit that has directly confronted this issue, the Eastern District of Louisiana, in *Greco v. Velvet Cactus, LLC*, considered whether a selection of eleven text messages, from approximately 111 that had been exchanged between two persons, were subject to exclusion under the best evidence rule.  Civil Action No. 13-3514, 2014 WL 2943598 (E.D. La. June 27, 2014).  In *Greco,* the cellular telephone owner forwarded the selection of text messages to an attorney's email, and such emails were produced in litigation.  The Court in *Greco* determined that they did not violate the best evidence rule, finding that "it is reasonable to conclude that the emails [containing the forwarded text messages] meet the definition of an original" under Rule 1001(d).  *Id.* at *3.  The limited number of the text messages produced (*i.e.*, the fact that they were a subset of each and every text message exchanged between the two persons), did not change this outcome, because each individual original accurately showed the information it purported to show.  *Id.*

This case is strikingly similar to *Greco*—the text messages at issue were screenshotted and forwarded to a Synergies employee.  That the entire thread is not reproduced is immaterial, since the relevant text messages are accurately reproduced by the screenshot in Exhibit C.  The screenshot constitutes an "original" under the best evidence rule, and is admissible.

## III.    The text message and its contents pursuant to Rules 901 and 403.

Plaintiffs additionally seek exclusion of the text message in Exhibit C pursuant to Rules 901 and 403.  Plaintiffs stress that Defendants will be unable to authenticate the text message.

However, as explained above, and as demonstrated by Exhibit C, the text message itself was included as an attachment to an email string originating from DirecTV and which was eventually sent to Roger Hope, a Synergies employee. Defendants have identified Mr. Hope as a person with knowledge in this case, and he will be available to testify to his receipt of the email and text message at trial. The quantum of evidence and testimony necessary to authenticate evidence presents a "low bar" for admission—which requires only that the offering party prove a "rational basis for that party's claim that the document is what it is asserted to be." *See United States v. Turner*, ___ F.3d ___, 2019 WL 3849560, at *3 (8th Cir. 2019) (discussing the authentication of text messages and photographs from a criminal defendant's cellular telephone). Mr. Hope's foundation meets that low bar. Additionally, as noted above, Mr. White admitted the text message was sent from his phone to the White Communications customer. While he disputes that he himself caused it to be sent, he cannot deny that it is authentic. *See* Exhibit D.

Furthermore, this argument demonstrates Plaintiffs' fundamental misunderstanding of the nature of this evidence. Regardless of how the text message was sent to the customer, it is beyond dispute that what is attached to Exhibit C was communicated to Mr. Hope as a Synergies employee, and that it is Defendants' position that it formed the basis for Mr. White's removal from Synergies. Thus, the relevant inquiry with respect to authentication is whether Defendants can authenticate the email and text message as having been received from DirecTV. Further authentication of the precise origin of the text message included in Exhibit C is beyond the scope of the purpose for which such evidence would be offered. If the Court is concerned about the origin of the text message, a curative instruction can be given to the jury.

Finally, Plaintiffs argue the text message should be excluded pursuant to Rule 403. Defendants have addressed the probative versus prejudicial nature of the text message in Part I

*supra.*  This evidence is not substantially more prejudicial than probative, because it contains

Mr. White's own statement and is of central importance to the issues disputed in this case.  It will

not mislead or confuse the jury because whether Synergies was justified in removing Mr. White

following notification from DirecTV about the text message is one of the ultimate issues the jury

will be asked to decide.  Rather than distract, confuse, or mislead the jury, presentation of this

evidence will place the central issues of this case squarely before it.

## IV.    Character evidence.

Plaintiffs seek exclusion of character evidence pursuant to Rule 402 and 403.   Yet,

Plaintiffs fail to specifically identify this "other acts" evidence they seek to exclude, and provide

no examples of the type of evidence they contemplate exclusion of.

Additionally, because Plaintiffs have brought claims of defamation, evidence or testimony

suggestive of Mr. White's character is undoubtedly admissible.  *See Koonts v. Farmers Mut. Ins.*

*Ass'n of Van Buren Cty.*, 16 N.W.2d 20, 24 (Iowa 1944) ("Evidence of good character of a party

to a civil action is ordinarily not admissible.  There is an exception to the rule where the party's

character is put directly in issue, as in civil actions for seduction, criminal conversation, libel and

slander." (citations omitted)); *see also Longmire v. Ala. State Univ.*, 151 F.R.D. 414, 419 (M.D.

Ala. 1992) ("[A] person who files a defamation action puts his or her character into issue."); *Ginter*

*v. N.W. Mut. Life Ins. Co.*, 567 F. Supp. 627, 628 (E.D. Ky. 1984) ("After careful consideration,

the court concludes that it is the intention of Rule 404(a) to exclude evidence of a character trait

in civil cases, except where character itself is an element of the claim or defense, as in cases

involving defamation.").

Additionally, this type of evidence is essential to Defendants' defense of Plaintiffs'

defamation and tortious interference claims.  In his deposition, Mr. White identified, as the sole

basis for his defamation claims, that some unspecified person from Synergies must have told a third party about the text message and the deterioration of the business relationship with Synergies. Furthermore, when asked whose opinion of him changed after hearing about the text message, Mr. White identified a single person—Mr. Newsom.[10]   As this testimony demonstrates, the entirety of his defamation claim stems from his deplorable text message and the events that followed.  Plaintiffs cannot bring a defamation claim based on the text message, and then attempt to claim that the text message is inadmissible and irrelevant.

Furthermore, Defendants have asserted truth and opinion as defenses to the defamation claims, and they are entitled to prove to the jury that, to the extent any statement was made by a Synergies employee about Mr. White, such statement was true or merely the opinion of the speaker.  *See* Answer and Affirmative Defenses (dkt no. 22).  Similarly, Plaintiffs cannot admit that reputation and prior acts are relevant considerations in determining whether to remove an employee, but then attempt to exclude that evidence.  *See also* Part I *supra*.

More importantly, Mr. Newsom will testify at trial that his opinion of Mr. White did not change at all as a result of anything he learned while working at Synergies, or because of anything done by Synergies.  Instead, he will testify that his view of Mr. White's reputation had been formed long before the text message was sent as a result of, amongst other things, Mr. White's continuous degrading conduct with respect to women, including comments to them that tracked, almost word-for-word, the text message he claimed to have not sent to the customer.  This critical element of Plaintiffs' claims of defamation requires Defendants to be able to explain why their actions caused no reputational harm to Plaintiff.  This evidence is admissible.

---

[10] Mr. White's deposition testimony is attached as Exhibit H [White Dep. 162:14-164:8; 165:19-167:3].

Finally, Mr. White has made clear that his tortious interference claim is based on a single contract he alleges he lost with a company called Exede. Mr. White testified that Exede terminated its contract with White Communications because "they heard that we weren't performing with DirecTV and had heard about the text."[11] Therefore, for the same reasons stated with respect to Plaintiffs' defamation claims, the text message itself, and the conduct surrounding it, are relevant because they form the basis of Plaintiffs' tortious interference claim. *See* Part I *supra*. Additionally, given Defendants' exposure to damages based on loss of reputation due to the tortious interference claim, *see Lawrence v. Grinde*, 534 N.W.2d 414, 419 (Iowa 1995) (quoting *Greives v. Greenwood*, 550 N.E.2d 334, 338 (Ind. Ct. App. 1990)), Defendants must be entitled to submit evidence of Plaintiffs' reputation for those purposes. Accordingly, Defendants request that the Court deny this portion of Plaintiffs' motion. In the alternative, Defendants request that the Court reserve ruling on Rule 404 evidence until the time of trial.

## V.    Accord and satisfaction.

Plaintiffs seek to exclude evidence and argument that the parties have reached an "accord and satisfaction" in this case. Defendants are unsure to which claims Plaintiffs refer, but Defendants do not intend to introduce evidence or argument that they have reached any sort of settlement with Mr. White as to any of his claims. To the extent that Plaintiffs refer to the so-called secondary buyout agreement that the parties entered into following Mr. White's removal as a member of Synergies, Defendants reserve the right to introduce evidence and testimony regarding those payments, as such payments both speak to the proper measure of potential damages, and Mr. White's removal as a member.

---

[11] A copy of Mr. White's deposition testimony on this issues is attached as Exhibit I [White Dep. 174:1-176:21].

 /s/ Ethan S. Olson
Frank Boyd Harty
Ethan S. Olson
Nyemaster Goode, P.C.
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309
Telephone:   (515) 283-3100
Facsimile:   (515) 283-8045
Email: fharty@nyemaster.com
         eolson@nyemaster.com

 /s/ Jay R. Aldis
Jay R. Aldis     (*Pro Hac Vice*)
Jordan T. Kindred (*Pro Hac Vice*)
Bracewell LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002-2770
Telephone:   (713) 221-1381
Fax:   (800) 404-3970
Email:   jay.aldis@bracewell.com
         jordan.kindred@bracewell.com

**ATTORNEYS FOR DEFENDANTS
SYNERGIES3 TEC SERVICES, LLC,
ERIC ATCHLEY, AND BENTON P.
ODOM**

## Certificate of Service

I hereby certify that on August 23, 2019, I presented the foregoing document to the Clerk of Court for filing and uploading into the ECF system, which will send notification to the following ECF system participants:

William W. Graham
Wesley T. Graham
Duncan Green, P.C.
400 Locust Street, Suite 380
Des Moines, IA 50309
Telephone:   (515) 288-6440
Facsimile:   (515) 288-5448
Email: wwgraham@duncangreenlaw.com
        wtgraham@duncangreenlaw.com

ATTORNEY FOR PLAINTIFFS

/s/ Shannon Greenman