UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

WHITE COMMUNICATIONS, LIMITED LIABILITY COMPANY and JEFFREY N. WHITE,

Plaintiffs/Counterclaim Defendants,

vs.

SYNERGIES3 TEC SERVICES, LLC,

Defendant/Counterclaimant.

No. 4:18-cv-00124

DEPOSITION OF

JEFFREY NEIL WHITE

COPY

THE DEPOSITION OF JEFFREY NEIL WHITE, taken before Janice M. Doud, Registered Professional Reporter and Notary Public, commencing at 9:06 a.m., on the 4th day of June, 2019, at 700 Walnut Street, Suite 1600, Des Moines, Iowa.

Reported by: Janice M. Doud, R.P.R.

EXHIBIT
E

Q. How do you know his opinion of you has changed as a result of hearing someone repeat a rumor?

**A. Well, I don't necessarily know that it's, you know, repeating a rumor; but I'm sure Mr. Newsom had knowledge of it through Synergies. He works for Synergies and don't talk to me anymore. The man was like a brother to me, and that was taken away from us.**

Q. Are you --

**A. Probably because of his fear of being fired if he talked to me.**

Q. That to me sounds different than him not wanting to talk to you because his opinion of you has changed because of a rumor about your having sex with a customer or sending an inappropriate text message or beating someone up.

**A. I believe that was the first part of my testimony.**

Q. I don't understand that response.

**A. That Mr. Newsom had knowledge of this through Synergies.**

Q. Okay. But I haven't heard any testimony or any evidence that his opinion of

you has changed because he heard a rumor.

**A. Well, obviously his opinion has changed because he doesn't talk to me anymore.**

Q. And is it possible that it could be for any number of reasons that are entirely unrelated to sending a text message, a rumor about having intercourse with a customer, or beating someone up?

**A. It is possible. It could be out of fear of being fired from his job for talking to me.**

Q. What is the rumor about you beating someone up?

**A. Just that's what we were told, I beat somebody up.**

Q. By whom were you told?

**A. I was told by my call center manager. One of the techs that she had talked to that did a DirecTV sale said he had heard that.**

Q. Any other details?

**A. No.**

Q. Any details about when?

**A. No.**

Q. And why do you think that is a rumor that emanated from Synergies3 or its management?

**A. No clue. Synergies manages my people.**

Q. Have you ever beat someone up?

**A. Yes.**

Q. How recently?

**A. Oh, it's been years ago. Self-defense.**

Q. All right. Well, then that might be true if someone said you beat someone up; right?

**A. Could be.**

Q. All right. So how about White Communications? Has White Communications been defamed?

**A. Not that I know of.**

(Exhibit 9 was marked for identification.)

Q. I'm going to hand you what's been marked as Exhibit 9, Mr. White. This is the Amended and Substituted Complaint and Jury Demand. Do you recognize the document?

**A. Yes. I've seen the first page of this.**

Q. Did you read this document before it was filed?

**A. Yes. It's been awhile.**

Q. In paragraph 15, the petition, the amended and substituted petition, says that "Synergies3 has failed to pay White

Communications the full payments it agreed to make and it also wrongfully purported to terminate Jeffrey's rights and interests as a member of Synergies3." Did I read that correctly?

**A. Yes.**

Q. All right. In talking about your damages and in your earlier testimony, have you told me your calculation of the payments that have not been made?

**A. Yes.**

Q. Tell me about the wrongfully purporting to terminate your rights and interests in Synergies3.

What was not done effectively or correctly?

**A. Well, I don't think that the investigation was conducted properly. I don't think that Ben or Eric put a whole lot of effort into standing up for me or finding out if there were any alternatives, or I don't think they even asked what the penalties would be if they did keep me on working.**

Q. What should have been done that wasn't done by either the individuals or the company

Synergies3?
A. **I just told you.**
Q. Did you tell them that they needed to do more investigation?
A. **I believe I thanked them for standing up for me.**
Q. What does that mean?
A. **"Hey, thanks for standing up for me."**
Q. Are you being --
A. **"Thanks for doing the right thing."**
Q. Are you being facetious?
A. **Facetious, yes.**
Q. What more of an investigation should they have done?
A. **Well, I think there were a couple little -- couple different avenues. I wonder if either one of them asked DirecTV if they thought, "Hey, you know, do you think maybe this customer did this?" Hey, do you think maybe somebody else may have done this? Do you think that maybe his phone could have been spoofed?"**
Q. Blame the victim?
A. **Pardon?**
Q. Blame the victim? Were you asking Synergies to ask AT&T to blame the victim?

A. **Blame the victim?**
Q. Yeah, the recipient of the e-mail.
A. **I guess if that's the way you want to put it.**
Q. Anything else that wasn't done that should have been done that you think would have resulted in a different outcome?
A. **Not right now.**
Q. Do you think there was risk to Synergies3 by approaching AT&T in light of the fact that AT&T had not yet made a decision on who would be the two surviving installers out of the then pool of 60?
A. **No, I don't think there would be any risk in asking questions.**
Q. Do you think it's possible that AT&T might have said, you know, "That's an interesting question and, guess what, you guys are now out of the running because we don't want to have to deal with it"? Do you think that's a possible outcome?
A. **No.**
Q. They had 60 other potential suitors to fill those two slots. Why would AT&T want to take on the negative public relations of an

installer sending an inflammatory text message to a customer?
A. **Well, first of all, it wasn't an installer.**
Q. Okay. You were even higher than an installer. You were -- What was your title? Services provider?
A. **Yes.**
Q. Okay. So we even have a higher level within the independent organization holding a contract who is allegedly sending an inflammatory and inappropriate text message to a customer.
A. **Well, first of all, I could understand them, you know, doing something to White Communications. It was a White Communications damage claim to begin with, not a Synergies damage claim.**
Q. If White Communications is associated with Synergies, which it was at the time because of the merger or asset purchase, Synergies could suffer the consequences of what was perceived to be yours and White Communications' bad conduct; couldn't they?
A. **I guess that would be speculation on my**

**part, but I don't -- I don't think so.**
Q. But it's possible, isn't it?
A. **Anything's possible.**
Q. In paragraph 16 of Exhibit 9, you allege "Defendants made false and defam" --
A. **Where are we at?**
MR. GRAHAM: It's on page 3.
Q. Paragraph 16. Do you have it?
A. **Right here?**
Q. Yep. It says, "Defendants made false and defamatory statements to third parties about plaintiffs, as a result of which plaintiffs have suffered injury and damages to their reputations and business."
Is that what you just told me a few moments ago about the defamation claims?
A. **Yes.**
Q. And that's the sum and substance of your evidence; correct?
A. **Yes.**
Q. You state in paragraph 17, "Through their false and defamatory statements and through other direct interference, defendants caused third parties to refuse and to decline to do business with plaintiffs."

SIGNATURE PAGE

I, JEFFREY NEIL WHITE, the witness in the foregoing deposition, do hereby certify that I have read the foregoing pages of typewritten material and that the same is, with the corrections noted on the attached page, if any, a true and correct transcription of my deposition upon oral examination given at the time and place herein stated.

_ _ _ _ _ _ _ _ _ _ _ _ _ _

JEFFREY NEIL WHITE

Subscribed and sworn to before me this _ _ day of _ _ _ _ _ _ _, 2019.

_ _ _ _ _ _ _ _ _ _ _ _ _

Notary Public

CORRECTION/CHANGE SHEET

I have read the entire transcript of my deposition taken on the 4th day of June, 2019, or the same has been read to me. I request that the following changes be entered upon the record for the reasons indicated. I have signed my name to the signature page and authorize you to attach the same to the original transcript.

Page Line Correction or change and reason therefor

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

Date _ _ _ _ _ _ Signature _ _ _ _ _ _ _ _ _ _ _

C E R T I F I C A T E

I, the undersigned, a Registered Professional Reporter and Notary Public, do hereby certify that I acted as the Registered Professional Reporter in the foregoing matter at the time and place indicated herein; that I took in shorthand the proceedings had at said time and place; that said shorthand notes were reduced to typewriting under my supervision and direction, and that the foregoing pages are a full and correct transcript of the shorthand notes so taken; that said deposition was submitted to the witness for signature as requested and that any changes, if any, requested by the witness are attached hereto.

I further certify that I am neither attorney nor counsel for, or related to or employed by any of the parties in the foregoing matter, and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto, or financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 11th day of June, 2019.

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _

REGISTERED PROFESSIONAL REPORTER and NOTARY PUBLIC