```
 1              UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF IOWA
 2                    CENTRAL DIVISION

 3   WHITE COMMUNICATIONS,      )
     LIMITED LIABILITY          )
 4   COMPANY and JEFFREY N.     ) No. 4:18-cv-00124
     WHITE,                     )
 5                              )
     Plaintiffs/Counterclaim    ) DEPOSITION OF
 6   Defendants,                )
                                ) JEFFREY NEIL WHITE
 7   vs.                        )
                                )        COPY
 8   SYNERGIES3 TEC SERVICES,   )
     LLC,                       )
 9                              )
     Defendant/Counterclaimant. )
10   ---------------------------)

11

12           THE DEPOSITION OF JEFFREY NEIL

13   WHITE, taken before Janice M. Doud, Registered

14   Professional Reporter and Notary Public,

15   commencing at 9:06 a.m., on the 4th day of June,

16   2019, at 700 Walnut Street, Suite 1600, Des Moines,

17   Iowa.

18

19

20

21

22

23      Reported by:  Janice M. Doud, R.P.R.

24                      EXHIBIT
                           H
25
```

                 Huney-Vaughn Court Reporters, Ltd.
                           515-288-4910

Page 162

1  Q.  What is the damage that you have --
2  What defamation damage have you sustained?
3  A.  Well, I think if I probably wanted to
4  go back to work in the industry today, that I
5  might have a difficult time.
6  Q.  I thought you told me earlier you're
7  perfectly content not being in the industry.
8  A.  What does that have to do with me
9  deciding to go back to work later?
10  Q.  Have you placed a dollar amount on what
11  these damages might be if you might decide you
12  wanted to go back into the business?
13  A.  No, we have not.
14  Q.  Who defamed you?  What was said and by
15  whom or what was published?
16  A.  Oh, man, the rumors going around out
17  there with technicians and former managers,
18  coming from Synergies supervisory, were
19  unbelievable.
20  Q.  Share it with us.  What was said?
21  A.  Well, let's see, they go everything
22  from I was screwing the lady to sent a text
23  message to beat somebody up to all kinds of
24  other things.
25  Q.  Okay.  When you say "screwing the

Page 163

1  lady," what are you referring to?
2  A.  Who I supposedly sent the text message
3  to.
4  Q.  And who at Synergies3 made the
5  statement that you were having sex with the
6  customer who filed the complaint about receiving
7  an inappropriate text message?
8  A.  I -- No idea.
9  Q.  How did you hear about it?
10  A.  Through techs calling into our office.
11  Q.  Can you remember the name of any of
12  these techs?
13  A.  The technicians?
14  Q.  Yeah.
15  A.  No, I can't remember any of the names.
16  Q.  All right.  Then you said one of the
17  rumors was you sent a text message.  Are you
18  referring to Exhibit 6?
19  A.  Yes.
20  Q.  Who at Synergies would have shared with
21  the world that you sent or are alleged to have
22  sent a text message?
23  A.  Well, let's see, it could be any of a
24  number of people:  Eric, Ben, Lee Branning,
25  Roger Hope.  Bill Klingeman was one of the

Page 164

1  worst.
2  Q.  Okay.  You say could have been.  Do you
3  know if any of them shared outside of -- if Eric
4  or if Ben Odom shared with anybody?
5  A.  Well, obviously, if it's coming back to
6  me through technicians, somebody from the group
7  had because they were the only ones other than
8  me that knew.
9  Q.  Did you tell anybody about the text
10  message?
11  A.  My wife and my mother.
12  Q.  Anyone else?
13  A.  Possibly my daughter Cassie.
14  Q.  Did you forward the e-mail to anybody?
15  A.  No.
16  Q.  That e-mail string that came from AT&T?
17  A.  No.
18  Q.  And so you're concluding that because
19  someone said you sent an inappropriate text
20  message, it had to be somebody at Synergies3.
21  Is that the basis for your testimony?
22  A.  Yes.
23  Q.  So it's deduction; is that right?
24  A.  Deduction.
25  Q.  And you can't point me to any

Page 165

1  individual?  You're just saying it must have
2  been somebody at Synergies3?
3  A.  Yes.
4  Q.  Tell me what damage you have sustained
5  to your reputation as a result of any defamation
6  that may have occurred.
7  A.  Ability to obtain work in the industry
8  if I decide to do that.
9  Q.  But you haven't tried; right?
10  A.  I have a couple times.
11  Q.  And are you going to -- And did
12  somebody with whom you sought employment within
13  the industry tell you they were not going to
14  offer you a job because there's a rumor out
15  there that you were having sex with a customer
16  and/or that you sent a text message to this
17  customer and/or that you beat up someone?
18  A.  No, they did not.
19  Q.  Tell me who has a different opinion of
20  you today than they did before this rumor about
21  having sex with a customer, sending a text
22  message, or beating someone up was circulating.
23  A.  Jerry Newsom.
24  Q.  What has Mr. Newsom said to you?
25  A.  Mr. Newsom hasn't said anything to me.

Page 166

1  Q.  How do you know his opinion of you has
2  changed as a result of hearing someone repeat a
3  rumor?
4  A.  Well, I don't necessarily know that
5  it's, you know, repeating a rumor; but I'm sure
6  Mr. Newsom had knowledge of it through Synergies.
7  He works for Synergies and don't talk to me
8  anymore.  The man was like a brother to me, and
9  that was taken away from us.
10 Q.  Are you --
11 A.  Probably because of his fear of being
12 fired if he talked to me.
13 Q.  That to me sounds different than him
14 not wanting to talk to you because his opinion
15 of you has changed because of a rumor about your
16 having sex with a customer or sending an
17 inappropriate text message or beating someone
18 up.
19 A.  I believe that was the first part of my
20 testimony.
21 Q.  I don't understand that response.
22 A.  That Mr. Newsom had knowledge of this
23 through Synergies.
24 Q.  Okay.  But I haven't heard any
25 testimony or any evidence that his opinion of

Page 167

1  you has changed because he heard a rumor.
2  A.  Well, obviously his opinion has changed
3  because he doesn't talk to me anymore.
4  Q.  And is it possible that it could be for
5  any number of reasons that are entirely
6  unrelated to sending a text message, a rumor
7  about having intercourse with a customer, or
8  beating someone up?
9  A.  It is possible.  It could be out of
10 fear of being fired from his job for talking to
11 me.
12 Q.  What is the rumor about you beating
13 someone up?
14 A.  Just that's what we were told, I beat
15 somebody up.
16 Q.  By whom were you told?
17 A.  I was told by my call center manager.
18 One of the techs that she had talked to that did
19 a DirecTV sale said he had heard that.
20 Q.  Any other details?
21 A.  No.
22 Q.  Any details about when?
23 A.  No.
24 Q.  And why do you think that is a rumor
25 that emanated from Synergies3 or its management?

Page 168

1  A.  No clue.  Synergies manages my people.
2  Q.  Have you ever beat someone up?
3  A.  Yes.
4  Q.  How recently?
5  A.  Oh, it's been years ago.  Self-defense.
6  Q.  All right.  Well, then that might be
7  true if someone said you beat someone up; right?
8  A.  Could be.
9  Q.  All right.  So how about White
10 Communications?  Has White Communications been
11 defamed?
12 A.  Not that I know of.
13        (Exhibit 9 was marked for
14        identification.)
15 Q.  I'm going to hand you what's been
16 marked as Exhibit 9, Mr. White.  This is the
17 Amended and Substituted Complaint and Jury
18 Demand.  Do you recognize the document?
19 A.  Yes.  I've seen the first page of this.
20 Q.  Did you read this document before it
21 was filed?
22 A.  Yes.  It's been awhile.
23 Q.  In paragraph 15, the petition, the
24 amended and substituted petition, says that
25 "Synergies3 has failed to pay White

Page 169

1  Communications the full payments it agreed to
2  make and it also wrongfully purported to
3  terminate Jeffrey's rights and interests as a
4  member of Synergies3."  Did I read that
5  correctly?
6  A.  Yes.
7  Q.  All right.  In talking about your
8  damages and in your earlier testimony, have you
9  told me your calculation of the payments that
10 have not been made?
11 A.  Yes.
12 Q.  Tell me about the wrongfully purporting
13 to terminate your rights and interests in
14 Synergies3.
15        What was not done effectively or
16 correctly?
17 A.  Well, I don't think that the
18 investigation was conducted properly.  I don't
19 think that Ben or Eric put a whole lot of effort
20 into standing up for me or finding out if there
21 were any alternatives, or I don't think they
22 even asked what the penalties would be if they
23 did keep me on working.
24 Q.  What should have been done that wasn't
25 done by either the individuals or the company

Page 226

```
 1                SIGNATURE PAGE
 2            I, JEFFREY NEIL WHITE, the
 3   witness in the foregoing deposition, do hereby
 4   certify that I have read the foregoing pages of
 5   typewritten material and that the same is, with
 6   the corrections noted on the attached page, if
 7   any, a true and correct transcription of my
 8   deposition upon oral examination given at the
 9   time and place herein stated.
10
11              _ _ _ _ _ _ _ _ _ _ _ _ _ _
12                 JEFFREY NEIL WHITE
13
14
15            Subscribed and sworn to before me
16   this _ _ day of _ _ _ _ _ _ _, 2019.
17
18
19
20
              _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
21                    Notary Public
22
23
24
25
```

Page 227

```
 1           CORRECTION/CHANGE SHEET
 2           I have read the entire transcript of
     my deposition taken on the 4th day of June,
 3   2019, or the same has been read to me.  I
     request that the following changes be entered
 4   upon the record for the reasons indicated.  I
     have signed my name to the signature page and
 5   authorize you to attach the same to the original
     transcript.
 6
     Page   Line   Correction or change and reason
 7                 therefor
 8   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
 9   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
10   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
11   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
12   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
13   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
14   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
15   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
16   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
17   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
18   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
19   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
20   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
21   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
22   _ _ _   _ _ _   _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
23   Date _ _ _ _ _ _   Signature _ _ _ _ _ _ _ _ _ _ _
24
25
```

Page 228

```
 1                  C E R T I F I C A T E
 2
 3            I, the undersigned, a Registered
     Professional Reporter and Notary Public, do
 4   hereby certify that I acted as the Registered
     Professional Reporter in the foregoing matter at
 5   the time and place indicated herein; that I took
     in shorthand the proceedings had at said time
 6   and place; that said shorthand notes were
     reduced to typewriting under my supervision and
 7   direction, and that the foregoing pages are a
     full and correct transcript of the shorthand
 8   notes so taken; that said deposition was
     submitted to the witness for signature as
 9   requested and that any changes, if any,
     requested by the witness are attached hereto.
10
                 I further certify that I am
11   neither attorney nor counsel for, or related to
     or employed by any of the parties in the
12   foregoing matter, and further that I am not a
     relative or employee of any attorney or counsel
13   employed by the parties hereto, or financially
     interested in the action.
14
                 IN WITNESS WHEREOF, I have hereunto
15   set my hand and seal this 11th day of June, 2019.
16
17
                 _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
18                 REGISTERED PROFESSIONAL REPORTER
                   and NOTARY PUBLIC
19
20
21
22
23
24
25
```